IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**AARON P. BOSTWICK**,                                    Civil Case No. 09-657-KI

              Plaintiff,

    vs.                                                                   OPINION AND ORDER

**OREGON DEPARTMENT OF
CORRECTIONS, MAX WILLIAMS**, Director,
**MARK KNOOTH**, Superintendent, SRCI, C.O.
C. Johnston, C.O.D. Straw, C.O. W. Hill and
C.O. Haynes,

              Defendants.


      Foster A. Glass
      Attorney at Law
      339 SW Century Drive, Suite 201
      Bend, Oregon  97702

            Attorney for Plaintiff


Page 1 - OPINION AND ORDER

John R. Kroger
Attorney General
Jacqueline Kamins
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon  97301-4096

       Attorneys for Defendants

KING, Judge:

       Plaintiff Aaron Bostwick is an inmate housed, at all times relevant to this lawsuit, by the Oregon Department of Corrections ("ODOC") at Snake River Correctional Institution ("SRCI"). Bostwick brings a lawsuit against the ODOC, as well as Max Williams, the Director, Mark Nooth, the Superintendent of SRCI, and four individual correctional officers (collectively, "ODOC") for violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First Amendment.[1]  Pending before me is ODOC's Motion for Summary Judgment (#36).  For the following reasons, I grant ODOC's motion and dismiss the second and third claims with prejudice.  I allow Bostwick the opportunity to file an amended complaint to reassert a claim for his lost or stolen property within ten days from the date of this Opinion and Order.

## LEGAL STANDARDS

       Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The

---

[1]Bostwick also alleges claims under the American Indian Religious Freedom Act, 42 U.S.C. § 1996, but that statute "'is simply a policy statement and does not create a cause of action or any judicially enforceable individual rights.'"  United States v. Mitchell, 502 F.3d 931, 949 (9th Cir. 2007) (quoting Henderson v. Terhune, 379 F.3d 709, 711 (9th Cir. 2004)).

initial burden is on the moving party to point out the absence of any genuine issue of material

fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

through the production of probative evidence that there remains an issue of fact to be tried.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the

court "must view the evidence on summary judgment in the light most favorable to the

non-moving party and draw all reasonable inferences in favor of that party."  Nicholson v.

Hyannis Air Service, Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (internal quotation omitted).

## BACKGROUND

Bostwick alleges he is a Native American, from the Oregon Kalapuya Tribe.  He initially

brought three claims, but moved to "amend" his complaint in September of 2009 by "removing

the first claim in the complaint."  Mot. to Am. Compl. 1 (#9).  He indicated he would "proceed

with claims II and III as submitted in the original complaint.  The first claim is for loss of

Religious Native American artifacts, which plaintiff request be amended and removed from

complaint."  Id.  The Court construed the request as a motion to dismiss the first claim and

granted the motion.

The Court subsequently appointed counsel for Bostwick.

In Claim II, Bostwick "seeks the right to use pure tobacco ties" in his cell while he prays.

Compl. 9.  He alleges that tobacco ties are "pinches of pure tobacco contained in small closed

squares of cloth, attached to twine or string."  Id. at 9-10.  Bostwick alleges that because he is

entitled to only one sweat lodge visit per month, which he views as a purification rite, permission

to hang the tobacco ties in his cell is even more important because "the deprivation of one

[religious rite] makes more critical, from a spiritual standpoint, the need to participate in

another." Id. at 9.  Bostwick believes that, because he is permitted to use tobacco for sweat lodge and the sacred pipe ceremony, permitting additional access would not be difficult.

ODOC has banned tobacco in its institutions.  Steven Brabb, the supervisor for inmate religious activities, testifies that he is not aware of any other inmate making a request to hang tobacco ties in his cell.  He believes Native Americans generally do not display tobacco ties in their homes.  Al Hannon, Institution Security Manager at SRCI, testifies that since tobacco is contraband, it is a desired item.  He asserts that inmates are not permitted to have tobacco in their cells because the inmate could use it himself or sell it to other inmates, and because it presents a fire hazard.  Religious volunteers do bring tobacco for use during ceremonies where the volunteer supervises its use.

In Claim III, Bostwick seeks permission to wear his "Native American Religious Headband or Hair Wraps" outside of his cell.  Id. at 11.  He reports that defendants permit him to wear a headband in his cell and at Native American ceremonies.  However, he is prohibited from wearing the headband out in the recreation yard or gym when other inmates wear sweat bands. He alleges that wearing a headband is important because "[i]t continually reminds us of our duties to the creator, our fellow humans, our families, ourselves, our extended families and communities.  It continually reminds us to be thankful for good health, physical, mental, emotional and spiritual wellbeing.  It also reminds us everytime we reach up to touch it for any reason to pray for the people." Id.

Brabb testifies that inmates are permitted to wear headbands in their cells, bunk areas, and at approved Native American ceremonies, including pow-wows and beading and art classes. ODOC treats Muslim koofie caps, Sufi takya caps, and Jewish yarmulkes the same way.

Hannon testifies that inmates may wear white headbands made of terry cloth, white Doo Rags made of white stretch nylon material, or white cotton handkerchiefs.  He testifies, "Inmates living in general population can wear their 'headband' only during an authorized Native American religious activity or in their cell."  Hannon Decl. ¶ 7.  He asserts that headbands cause security risks for the following reasons:  they may be used to smuggle contraband, alter an inmate's appearance, can be used as a restraint or weapon against staff, can be used to cause self harm, is one more item for staff to search during regular frisks, and may show an affiliation with a "Security Threat Group," or STG, such as the Indian Pride Organization.

With respect to this last security concern, Hannon testifies:

> Engaging in STG activities is unauthorized because of the potential for violence. The STG group may engage in violence to establish a power structure within the inmate population.  Staff are at risk of assault when breaking up the fights or segregating the offenders.  Other nonparticipating inmates could be mistaken for participants and be assaulted.  As a group, the inmates would attempt to exert control over other inmates and undermine staff authority.  This puts staff at risk of assault from inmates who do not respect authority.  Other inmates will be extorted for money, canteen items or assaulted.  Family members may be threatened via the STG acquaintances living in the community in order to coerce the inmate into engaging in unauthorized activity.

Id. at ¶ 11.  He also explains that inmates "may not wear headbands in standard general population activities such as recreation time on the yard" and that inmate attire is "tightly monitored to limit potential differences" between inmates because any variation can be used as a gang symbol or STG affiliation.  Id. at ¶ 13.

Page 5 - OPINION AND ORDER

**DISCUSSION**

I.    <u>First Claim for Relief – Lost or Stolen Property</u>

As I set forth above, Bostwick initially brought three claims, but moved to "amend" his complaint in September of 2009 by "removing the first claim in the complaint." Mot. to Am. Compl. 1 (#9). The Court construed the request as a motion to dismiss the first claim and granted the motion.

Bostwick's counsel indicates that the parties had agreed that Bostwick could amend the complaint before summary judgment was filed. He explains that his client did not understand the significance of dismissing the first claim, and "presently requires amendment of the complaint[.]" Pl.'s Am. Resp. 1.

Assuming that this first claim had been dismissed, ODOC did not move for summary judgment against it. Bostwick's counsel, however, devoted a substantial portion of his response to this first claim. In his first claim, Bostwick alleges that ODOC and four of its correctional officers failed to properly inventory his property and caused the property to be lost or stolen. Bostwick alleges he left two heirloom feathers and his mother's beaded medicine bag, which contained a jade ceremony stone, in his religious storage container, locked in a drawer of his cell while he attended sweat lodge. He took with him two additional feathers and one medicine bag. He left the two feathers with the chaplain's clerk. A few days later, Bostwick was placed in the Disciplinary Segregation Unit. Bostwick subsequently learned that his religious storage containers were empty. He filed a grievance. The response back from correctional officer Johnston was that he had inventoried the property; he remembered seeing the two prayer feathers and a medicine bag, but he did not indicate where they went. Bostwick appealed. The response

was that the items were "inadvertently left off the inventory sheet" but "there is no way of confirming you had a total of four prayer feathers and two medicine bags."  Compl. 5.

Bostwick alleges that the first feather had once belonged to his great-grandfather Chief Sangretta, who personally took it from a Golden Eagle, hand beaded it and braided a leather handle for it.  He believes the feather was over 150 years old.  The second feather was from a Bald Eagle, and it had belonged to Bostwick's great-grandmother Irene D.L. Smith Menard.  It, too, had been beaded and bound with leather and Bostwick believes it was 100 to 120 years old. Bostwick's mother had given him the medicine bag, which contained a family ceremony stone of pure jade that had been passed down through the generations.

In a letter to the Court, Bostwick explains that he moved to dismiss the first claim so that he could amend it to provide more facts to support it.

By the Court's scheduling order, all amendments to pleadings were due December 14, 2009.  See Scheduling Order for Civil Rights Actions Filed by Incarcerated Plaintiffs (#15). Counsel was not appointed until a month later.  Amendments to pleadings are generally favored. Pierce v. Multnomah County, 76 F.3d 1032, 1043 (9th Cir. 1996).  If considering a request to amend, the court should consider the following five factors:  (1) bad faith;  (2) undue delay;  (3) prejudice to the opponent;  (4) futility of the amendment; and (5) whether the pleadings have previously been amended.  Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990). Although no single factor is dispositive, prejudice to the opposing party is the most important factor.  Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990).

I have no reason to believe that Bostwick or his counsel acted in bad faith in failing to request permission to amend the complaint earlier, and delay alone is insufficient to deny leave to

amend.  In re Circuit Breaker Litig., 175 F.R.D. 547, 550 (C.D. Cal. 1997).  I have no basis to

conclude that the amendment would be futile or that an amendment would prejudice ODOC; in

balance, denying Bostwick the opportunity to amend would unduly prejudice him.

ODOC has permission to move against this claim via summary judgment within sixty

days of this Opinion and Order, or may propose another date by motion.  If the parties feel a Rule

16 telephone conference would be helpful, they may request one.

II.     Second and Third Claims for Relief

Bostwick's remaining claims are brought under the RLUIPA and the First Amendment.

A.      The RLUIPA Claims

The RLUIPA states:

No government shall impose a substantial burden on the religious exercise of a
person residing in or confined to an institution . . . even if the burden results from
a rule of general applicability, unless the government demonstrates that imposition
of the burden on that person --

(1)     is in furtherance of a compelling governmental interest; and

(2)     is the least restrictive means of furthering that compelling
governmental interest.

42 U.S.C. § 2000cc-1(a).  RLUIPA "protects institutionalized persons who are unable freely to

attend to their religious needs and are therefore dependent on the government's permission and

accommodation for exercise of their religion."  Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

1.      Substantial Burden on Religious Exercise

Under RLUIPA, Bostwick has the initial "burden of persuasion on whether the law . . . or

government practice that is challenged . . . substantially burdens the plaintiff's exercise of

religion." 42 U.S.C. § 2000cc-2(b).  If the plaintiff satisfies that burden, ODOC has the burden

of persuasion on the remaining factors.  Id.

ODOC argues that Bostwick has failed to meet his burden in demonstrating that his

inability to hang tobacco ties in his cell substantially burdens the exercise of his religion.  As an

initial matter, ODOC disputes that hanging tobacco ties is commonly done in the community;

Brabb has never had an inmate ask to hang tobacco ties.  Further, Bostwick's assertion is

unsupported that hanging tobacco ties is necessary because he has been deprived of other

purification rites.  Bostwick is permitted to make an offering at sweat lodge, and may participate

in smudging, drumming ceremonies, and at pipe ceremonies.

As for Bostwick's request to wear a headband, ODOC argues it is not a substantial

burden on his religious exercise that Bostwick is prohibited from wearing his headband in the

recreation yard or other communal areas when he is allowed to wear it in his cell and at Native

American gatherings.  ODOC points to two cases which also came to a similar conclusion:

Gerlach v. Brown, Nos. 99-4699 (SRC), 0r-3493 (SRC), 2007 WL 1659060, at *5 (D. N.J. Jun.

5, 2007) held that the inmate could not demonstrate a substantial burden in being denied a

colored headband since he had a white one and Cryer v. Clark, No. 09-10238-PBS, 2009 WL

6345768, at *6-7 (D. Mass. July 9, 2009) concluded the denial of a multicolored headband, when

the inmate could have a solid one, did not impose a substantial burden.

The Ninth Circuit has described the "substantial burden" test as restricting religious

exercise in a way that is "oppressive to a significantly great extent."  Warsoldier, 418 F.3d 989,

995 (9th Cir. 2005) (internal quotation omitted).  Bostwick has not responded to ODOC's specific

arguments and has failed to carry his burden of showing that ODOC's policies significantly

interfere with his ability to practice his religion.  He is permitted to participate in sweat lodge, where he may use tobacco ties with supervision, and he may participate in a large number of other purifying ceremonies, such as smudging, and drum and pipe ceremonies.  Additionally, he is permitted to wear his traditional headband in his cell and at Native American gatherings and ceremonies.  There is no evidence ODOC's policies restrict Bostwick's religious exercise in a way that is oppressive.

          2.      Compelling Government Interest

    Even if Bostwick had met his burden, however, I would find that ODOC's interests are compelling and it has found the least restrictive alternative.

    The Supreme Court considers "maintain[ing] good order, security and discipline, consistent with consideration of costs and limited resources" as a compelling government interest.  Cutter, 544 U.S. at 722.

    ODOC asserts tobacco is banned, it is highly sought after, and its use is permitted only with the supervision of a religious volunteer.  Other courts have recognized that in institutions where tobacco is banned, the government has a compelling security interest in controlling access to tobacco.  Skenandore v. Endicott, No. 05-C-0234, 2006 WL 2587545, at * 13 (E.D. Wis. Sept. 6, 2006); Thunderhorse v. Pierce, 364 F. App'x 141, 147-48 (5th Cir. 2010) (per curiam) (upholding ban on pipe use in cells); Taylor v. Hubbard, No. 1:10-cv-00404-SKO PC, 2010 WL 3033773, at *2 (E.D. Cal. July 30, 2010) (denying temporary restraining order; inmate permitted tobacco during ceremonies but not in cell).

    With respect to headbands, again, ODOC points to security concerns, particularly that the headbands can be used to identify membership in STGs.  Other courts have recognized that

limiting headband use is supported by the compelling government interest of controlling inmate gang associations.  Jonas v. Schriro, No. CV 04-2719-PHX-SMM (MEA), 2006 WL 2772641, at *5 (D. Ariz. Sept. 25, 2006) (compelling interest in discouraging open gang affiliation); see also Thunderhorse v. Pierce, 418 F. Supp. 2d 875, 883 (DOC "has a security concern regarding the presence of gangs, who often use clothing or insignia to identify members; for this reason, such items as Kufi caps worn by Muslims or medicine bags and headbands worn by Native Americans may only be worn inside of cells or during religious services"), aff'd in part, vacated in part, remanded on other grounds by 232 F. App'x 425 (per curiam).

Bostwick asserts that he would not burn the tobacco in his cell.  Even absent a concern about fire hazards, however, ODOC has a compelling interest in controlling access to tobacco and in preventing any prospect of tobacco distribution to other inmates.

Bostwick questions ODOC's rationale that it may prohibit Native American headbands because of concerns about smuggling contraband and changing an inmate's appearance when inmates are permitted to wear prison-issued white headbands and coverings.

Hannon explains that inmates "may not wear headbands in standard general population activities such as recreation time on the yard" and that inmate attire is "tightly monitored to limit potential differences" between inmates because any variation can be used as a gang symbol or STG affiliation.  Hannon Decl. ¶ 13.  I can see how Bostwick might read this statement as referring to traditional headbands, but ODOC clarifies that its policy is that the white headbands and headwraps may be worn in cells and at authorized religious activities.  Otherwise, no headcoverings, whether white or Native American, may be worn during general population activities.

Page 11 - OPINION AND ORDER

In sum, ODOC has met its burden of showing it has a compelling government interest in controlling tobacco access and in restricting headband use.

3.    Least Restrictive Means

Under the law, ODOC must also establish that its policy is the least restrictive alternative to achieve its security interests.  Warsoldier, 418 F.3d at 999.

ODOC underscores that it is using the least restrictive means to control tobacco access and headband use.  Although tobacco is banned, it may be used at Native American ceremonies with supervision.  Similarly, headbands may be worn at ceremonies and in cells.  A smaller number of inmates are present at ceremonies, so it is much easier for guards to control any issues arising from STG identification.

Bostwick argues ODOC could permit him use of tobacco ties in his cell with restrictions. It could require him to use the tobacco ties exclusively during prayer, it could keep account of the ties and tobacco, and require him to put the ties in his medicine bag when not in use.  Bostwick's suggestions, however, would burden the administration of the prison by requiring prison officials to inform correctional officers about Bostwick's special exemption from the normal rules of tobacco possession.  It would also impose an obligation on correctional officers to monitor Bostwick's possession and prevent him from dispensing tobacco throughout the prison.  These suggestions do not ensure that ODOC's compelling interest in security is met and this Court defers to ODOC's conclusion that tobacco ties should only be permitted in the supervised environment of the sweat lodge.  See Cutter, 544 U.S. at 723 (Congress expected courts to give "due deference to the experience and expertise of prison and jail administrators in establishing

necessary regulations and procedures to maintain good order, security and discipline, consistent with costs and limited resources.").

I find that ODOC is using the least restrictive means to achieve its compelling interest in security.

     B.    <u>First Amendment</u>

Under the First Amendment, ODOC's restrictions must be "reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). In determining the reasonableness of the regulation, the court considers: (1) whether there is a valid, rational connection between the prison regulation and the governmental interest, (2) whether there are alternative means for the inmate to exercise the right, (3) whether the impact of accommodating the asserted constitutional right will have an adverse impact on the guards or other inmates, and (4) whether there are other ready alternatives. <u>Id.</u> at 89-91.

Because I have found ODOC's policies protect its compelling interest in maintaining prison security, the restrictions are necessarily reasonably related to legitimate penological interests. As such, the Court finds that Bostwick's claims related to tobacco ties and headband use under the First Amendment must also be dismissed.


///




///

## CONCLUSION

For the foregoing reasons, ODOC's Motion for Summary Judgment (#36) is granted as to Bostwick's second and third claims.  Bostwick may file an amended complaint asserting a claim for the lost or stolen property within ten days from the date of this Opinion and Order.  ODOC may move against Bostwick's lost or stolen property claim via summary judgment within sixty days of this Opinion and Order, or may propose another date by motion.  If the parties feel a Rule 16 telephone conference would be helpful, they may request one.

IT IS SO ORDERED.

Dated this _____31st_____ day of March, 2011.


___/s/ Garr M. King_____
Garr M. King
United States District Judge