UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**AARON P. BOSTWICK**,                                    Civil Case No. 3:09-657-KI

               Plaintiff,                       OPINION AND ORDER

     v.

**STATE OF OREGON, OREGON
DEPARTMENT OF CORRECTIONS,
MARK NOOTH, SUPERINTENDENT,
individually, SRCI CORRECTIONS
OFFICERS JOHNSON, STROW, HILL,
and HAYNES, individually,**

               Defendants.

Foster A. Glass
339 SW Century Drive, Suite 201
Bend, OR 97702

         Attorney for Plaintiff

John Kroger
Attorney General
Jacqueline Kamins

Page 1 - OPINION AND ORDER

Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

      Attorneys for Defendants

KING, Judge:

      Plaintiff Aaron Bostwick is an inmate housed, at all times relevant to this lawsuit, by the

Oregon Department of Corrections ("ODOC") at Snake River Correctional Institution ("SRCI").

Bostwick brings a First Amended Complaint, with the assistance of appointed counsel, against the

State of Oregon; ODOC; Mark Nooth, the Superintendent of SRCI; and four individual correctional

officers for violations of his First and Fourth Amendment rights, as well as claims of conversion,

negligence, and negligence per se. His claims arise out of the disappearance of his Native American

religious property. Pending before me is defendants' Motion for Summary Judgment [64]. For the

following reasons, I grant the motion, dismiss the first three claims in the First Amended Complaint

with prejudice, and dismiss the state tort claims without prejudice.

## LEGAL STANDARDS

      Summary judgment is appropriate when there is no genuine dispute as to any material

fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The

initial burden is on the moving party to point out the absence of any genuine issue of material

fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

through the production of probative evidence that there remains an issue of fact to be tried.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the

court "must view the evidence on summary judgment in the light most favorable to the

Page 2 - OPINION AND ORDER

non-moving party and draw all reasonable inferences in favor of that party." Nicholson v.

Hyannis Air Service, Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (internal quotation omitted).

## BACKGROUND

Bostwick alleges he is a Native American, from the Oregon Kalapuya Tribe. Bostwick

alleges that ODOC and four of its correctional officers failed to properly inventory his religious

property and caused the property to be lost or stolen. Bostwick alleges he left two heirloom

feathers and his mother's beaded medicine bag, which contained a jade ceremony stone, in his

religious storage container, locked in a drawer of his cell while he attended sweat lodge. He

took with him two additional feathers and one medicine bag. He left the two feathers with the

chaplain's clerk. A few days later, on January 14, 2009, Bostwick was placed in the Disciplinary

Segregation Unit. Bostwick subsequently learned that his religious storage containers were

empty. He filed a grievance. The response back from correctional officer Johnston was that he

had inventoried the property; he remembered seeing the two prayer feathers and a medicine bag,

but he did not indicate where they went. Bostwick appealed. The response was that the items

were "inadvertently left off the inventory sheet" but "there is no way of confirming you had a

total of four prayer feathers and two medicine bags." First Am. Compl. Ex. 1, at 6.

Officer Johnston and Captain Blankenbaker looked for the missing items but did not

locate them. Captain Blankenbaker replaced the two prayer feathers with two feathers from

Religious Services and Chaplain Persinger obtained a replacement medicine bag from the

community. Captain Blankenbaker and Chaplain Persinger offered these replacement items to

Bostwick on May 19, 2009, asking Bostwick if he would accept them as replacement property.

He agreed.

Page 3 - OPINION AND ORDER

Bostwick alleges that the first feather had once belonged to his great-grandfather and he believes the feather was over 150 years old. The second feather had belonged to Bostwick's mother and was 70 to 90 years old. Bostwick's mother had given him the medicine bag, which contained a family ceremony stone of pure jade that had been passed down through the generations for over 200 years.

ODOC administrative rules prohibit prisoners from possessing items of personal property that exceed $100 in value, or that have an aggregate value exceeding $1,000, with the exception of specifically identified items not relevant to this dispute. OAR 291-117-0130.

Bostwick seeks only damages not injunctive relief.

## DISCUSSION

I.    <u>First Claim–First and Fourth Amendment Civil Rights Violations Against Superintendent Mark Nooth</u>

Bostwick alleges Mark Nooth had supervisory authority over the other SCRI corrections officers and, in that capacity, learned about the loss of Bostwick's ceremonial property from the grievances Bostwick filed. Bostwick also alleges the information Nooth received "showed a clear discrepancy" in the officers' statements and that Nooth "was deliberately indifferent and tacitly authorized the correction officers' conduct by taking no further investigative or corrective action." First Am. Compl. ¶ 16.

Page 4 - OPINION AND ORDER

Defendants move for summary judgment against this claim, arguing that Nooth cannot be liable on a *respondeat superior* liability theory. Additionally, Bostwick does not allege any facts supporting a finding that Nooth participated in or directed the alleged violations.[1]

In his briefing, Bostwick clarifies that his legal theory against Nooth is that he violated Bostwick's due process rights by failing to investigate the loss of the items, particularly given the officers' inconsistent statements regarding the loss. The items were held as protected property under "lock and key" and could not have "vanish[ed]" without an official's involvement. Pl.'s Resp. 3. Bostwick contends his affidavit and grievance contain statements that "several of the officers had a vindictive attitude against him due to his grievances and insistence on exercising native American ceremonies in his cell." Id. at 4.

To the extent Bostwick is alleging a due process violation, "a state can cure what would otherwise be an unconstitutional deprivation of 'life, liberty or property' by providing adequate post-deprivation remedies." Zimmerman v. City of Oakland, 255 F.3d 734, 737 (9th Cir. 2001). In the case of deprivation of property, "post-deprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." Zinermon v. Burch, 494 U.S. 113, 128 (1990). Here, Bostwick grieved the loss of the items, the loss was investigated, Bostwick was offered replacement items, and he accepted them. There is no due process violation.

As for whether Nooth engaged in any activities that would subject him to supervisory liability, the record is devoid of any evidence (as opposed to allegations) that Nooth participated

---

[1]Defendants also make the same arguments with respect to the Director of ODOC, Max Williams, but Bostwick does not bring a claim against Williams.

in any of the actions here, or that his actions had any connection to the loss of property.  Indeed, Bostwick makes no statement in his affidavit indicating a belief that the officers or Nooth were acting out of retaliation and, in fact, he describes the loss as occurring due to the "negligence" of the officers.  First Am. Compl. Ex. 2, at 2.  Even considering the facts in the light most favorable to Bostwick, this claim must be dismissed.

II.     <u>Second Claim–Fourth Amendment Taking of Property Against All Individual Defendants</u>

Bostwick alleges the individual corrections officers violated his Fourth Amendment rights by depriving him of his personal property.  As defendants point out, however, the Supreme Court is clear that a prisoner has no Fourth Amendment claim for the search or seizure of property because "prisoners have no legitimate expectation of privacy[.]"  <u>Hudson v. Palmer</u>, 468 U.S. 517, 530 (1984).

Bostwick responds that he alleges intentional conduct not negligent conduct, raising a triable issue of fact, and that <u>Lovelace v. Lee</u>, 472 F.3d 174 (4th Cir. 2006), protects a prisoner from an intentional deprivation of property under the Fourth Amendment.

The problem with Bostwick's argument is that <u>Hudson</u> specifically discusses the intentional destruction of property and concludes the Fourth Amendment does not provide a prisoner with a right to be secure in his property.  The Supreme Court makes clear that protection of an inmate's property is through available state remedies, as discussed above.  <u>Hudson</u>, 468 U.S. at 528, n.8.  <u>Lovelace</u> discusses intentional versus negligent conduct in the context of alleged violations of the Religious Land Use and Institutionalized Persons Act and the First Amendment, not the Fourth Amendment.  This claim must be dismissed.

Page 6 - OPINION AND ORDER

III.    <u>Third Cause of Action–First Amendment Interference with Religious Practice</u>

Bostwick alleges the defendants deprived him of his ceremonial property, knowing the property was a "necessary and integral part of his religious ceremonies, and that the deprivation of these artifacts would interfere with" his First Amendment right to free exercise.  First Am. Compl. ¶ 21.  He alleges defendants deprived him of his property intentionally and deliberately.

Defendants rely on Captain Blankenbaker's statement that he and his staff attempt to handle religious items very carefully, that when he learned Bostwick's belongings were lost he initiated "many searches" to try and find them and, because the searches were fruitless, he obtained replacement property.  Blankenbaker Decl. ¶ 12.  He then states, "Any loss of Inmate Bostwick's property was unintentional."  <u>Id.</u> ¶ 16.  Defendants cite cases for the proposition that a single mistake infringing on Bostwick's right to free expression simply does not make a constitutional violation.  <u>Lovelace</u>, 472 F.3d at 201 ("negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause"); <u>Porter v. Hill</u>, Civ. No. 07-605-CL, 2009 WL 1220576, * 4 (D. Or. Apr. 30, 2009) ("It is well settled that lack of due care, or negligence, is not a proper basis for 42 U.S.C. § 1983 liability.") (collecting cases).

Bostwick argues that he is not alleging negligence, but rather intentional or conspiratorial actions performed by "an officer who had motive and access to the locked container."  Pl.'s Resp. 5.  Again, the problem with these assertions is that Bostwick has submitted no evidence raising a material issue of fact to support his allegations of intentional conduct or that anyone had a motive to retaliate against him.  Bostwick provides no evidence (as opposed to allegations) that the officers were acting intentionally.  The only evidence in the record is Captain

Page 7 - OPINION AND ORDER

Blankenbaker's statement that the loss of Bostwick's property was "unintentional" and Bostwick's own statement in his affidavit describing the "negligence" of corrections officers. Blankenbaker Aff. ¶ 16; First Am. Compl. Ex. 2, at 2.  Again, even viewing the facts in the light most favorable to Bostwick, this claim must be dismissed.

IV.    <u>Fourth through Sixth Claims–Conversion, Negligence, and Negligence Per Se</u>

Finally, in his three tort claims, Bostwick alleges under Oregon law that defendants lost or destroyed valuable religious heirlooms, were negligent in failing to properly store and secure the property, and that such negligent acts violated administrative regulations intended to protect inmates' property.

Defendants seek judgment on these claims because under the Oregon Tort Claims Act the individual defendants must be substituted for the State of Oregon, and because the State of Oregon has not waived its sovereign immunity to be sued in federal court.  <u>See</u> ORS 30.265 ("[t]he sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification . . .  shall be an action against the public body only. . . . [O]n appropriate motion the public body shall be substituted as the only defendant."); <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 (1985) (Eleventh Amendment bars action in federal court against a State unless a State has waived its immunity).

Bostwick does not appear to dispute that the State of Oregon should be substituted for the individually named defendants in these three tort claims.  He merely suggests, "If the federal court should decide that no federal claim exists, the Court has the authority to dismiss the state

claims and Plaintiff has the right to file in state court within 30 days of dismissal."  Pl.'s Resp. 6.

Pursuant to the Oregon Tort Claims Act, claims 4 through 6 are deemed to be brought against the public body because the officers were acting within the scope of their employment. See ORS 30.265; Estate of Pond v. Oregon, 322 F. Supp. 2d 1161, 1165 (D. Or. 2004) (State notes that OTCA "requires that the public body be substituted for state employees who are individually named as defendants in a tort claim.").  Bostwick does not dispute that the officers were acting within the scope of their employment, and all the evidence indicates they were. Bostwick does not dispute that the officers are eligible for "representation and indemnification," and the evidence indicates they are.

Even though the Oregon Tort Claims Act is a waiver of sovereign immunity, it is not a waiver of Eleventh Amendment immunity.  Estate of Pond, 322 F. Supp. 2d at 1165.  The Eleventh Amendment bars a citizen from bringing suit against his own state in federal court. Micomonaco v. State of Wash., 45 F.3d 316, 319 (9th Cir. 1995).

Given that the State of Oregon is substituted for the officers, and that the Eleventh Amendment bars these claims in federal court against the State of Oregon, I dismiss Bostwick's fourth, fifth and sixth claims without prejudice.

## CONCLUSION

For the foregoing reasons, ODOC's Motion for Summary Judgment [64] is granted and claims one through three of Bostwick's First Amended Complaint are dismissed with prejudice. Claims four through six are dismissed without prejudice.  Since I dismiss the First Amended Complaint on the basis that Bostwick fails to raise a material issue of fact showing a

constitutional violation, and that the State of Oregon has not waived its sovereign immunity with

respect to the state tort claims, I do not reach defendants' alternative qualified immunity

argument.

IT IS SO ORDERED.

DATED this ___5th___ day of December, 2011.


                                            /s/ Garr M. King_____
                                            Garr M. King
                                            United States District Judge

Page 10 - OPINION AND ORDER